UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION

FILBERT NELSON,        )
        PETITIONER )
                       )
V.                     )
                       )
LUIS SPENCER,          )
        RESPONDENT )
                  ) NO. 04-10316-JLT

MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS OPPOSITION
TO RESPONDENTS MOTION TO DISMISS IN PART

Now comes the petitioner Filbert Nelson, acting pro-se

and hereby submits for consideration his memorandum of law in

support of his motion in opposition to the respondents motion

to dismiss in part.

ARGUMENT

Although state postconviction proceeding serve the

essentially appellate function of reviewing prior criminal

judgments, they are procedurally both less and more than

appeals. Townsend v. Sain, 372 U.S. 293, 312 (1963)(state

determinations of fact not binding in Federal Habeas Corpus

Proceedings if not based on "full and fair" factfinding

procedures); See also Keeney v. Tamayo-Reyes, 504 U.S. 1, 10

(1992)("state must afford the petitioner a full and fair

hearing on his Federal Claim" or else Federal rehearing of

facts is required); Stone v. Powell, 428 U.S. 465, 494-95 & n.

37 (1976).

However, a well-developed body of Federal Court caselaw

construing the Habeas Corpus Statute recognizes that state

proceeding are not sufficiently "full and fair" if an indigent
prisoner was denied an adequate opportunity to adduce the
relevant facts or legal claims, was subjected to otherwise
deficient or unconstitutional proceeding. 28 U.S.C.A. §§ 2254
(d)(2), 2254(c), and that adequacy of state court hearing or
hearing procedures warrants Federal Habeas Corpus hearing.

Accordingly, if available state post-conviction remedies
on their face or as applied offer an [in]adequate corrective
process for the hearing and determination of claims of violation
of Federal Constitutional guarantee's, it is counsel's
obligation to argue the point in state post-conviction/appeal
proceeding at the trial stage/level or whenever inadequacies in
the process become apparent and in all subsequent state court
appeals. Case v. Nebraska, 381 U.S. 336, 337 (1965); see also,
Hopkinson v. Shillinger, 866 F.2d 1185, 1220 (10th Cir. 1989),
cert denied, 497 U.S. 1010 (1990)("Any deficiency in the state
procedure would affect the presumption of correctness accord the
state court's finding"). Compare Coleman v. Zant, 708 F.2d 541,
548 (11th Cir. 1983). A fifth preclusion doctrine the harmless
error rule-also might apply with less force in Federal Habeas
Corpus Proceedings if the state court did not provide any-or,
possible, adequate review of the harmless issue. The petitioner
in this case was denied his full and fair opportunity to
litigate his claim in the state court level.

Arguing to the state court's that the states inadequate
corrective process violates Federal Constitutional Law. Assuming
that a Writ of Habeas Corpus is an appropriate mechanism

(2)

for providing the relief sought by such a claim. Gibson v. Jackson, 578 F2. 1045, 1046-47 (5th Cir. 1978), cert denied, 439 U.S. 1119 (1979). Some Federal court, however, have permitted analogous Habeas corpus actions seeking access to state corrective processes adequate to recognize constitutional violations and to order the prisoner's release from custody when that relief is appropriate as in this instant case now before this bar.

The defendant appealed from conviction on indictments returned June 26, 1996, by the Suffolk County Grand Jury, and charging him on Indictment No. 96-11060-001, with Trafficking in Cocaine in the amount of two hundred grams or more, and Indictment No. 96-11060-002, with unlawful possession of a firearm. The defendant was tried from May 30th, 1997 to June 4th, 1997, before a jury presided over by justice Spurlock, J., who on the latter dated declared a mistrial after making a determination that the jury was hopelessly deadlocked.

The trial was had again on June 9th, and 10th, 1997, before Spurlock, J., and a jury who on the latter dated returned verdicts of guilty. The defendant was sentenced on June 11, 1997 to a term of not less than eighteen or more than twenty years in state prison. The firearm charge was place on file. The defendant appealed and on June 4th, 2001 the sentence was affirmed. Further Appellate review was sought and his conviction was then affirmed.

(3)

On June 17th, 1996, McClendon contacted the defendant at
work and asked to retrieve a package he left in Mr. Nelson's
car the night before.  Nelson provided McClendon with directions
to his girlfriend's residence at 5050 Washington Street in West
Roxbury.  They met between 6:20 and 6:30 p.m.

When Mr. nelson arrived, he went into the building to check
the mail and stood outside looking for McClendon's car.
McClendon called out to Nelson from a car that was parked at the
bus stop adjacent to 5050 Washington Street.  When Mr. Nelson
approached the car, he was greeted by McClendon and two men who
McClendon introduced as his "cousins."  Nelson asked McClendon
to exit the car and at that point one of the "cousins" got out,
grabbed Mr. Nelson from behind and informed him that he was
under arrest.

Nelson was subsequently searched and McClendon's package
was found in his pants.  The defendant was transported to the
station for booking and while there, he saw Detective Pieroway
take Nelson's keys.  Pieroway informed the officer on duty to
not allow Nelson to use the phone.  On June 17th, 1996, Wellesley
Lieutenant Cunningham submitted a report stating: "I was notified
by Sgt. Eversley on June 17, 1996 that the Boston Police had
conducted a search warrant on the Target apartment.  The target
was identified as Filbert Nelson.  As a result of the search
warrant the Boston Police located and seized $71,000.00 and 200
grams of cocaine."  This report was completed at 19:22 hours on
June 17th, 1996, some six hours prior to the issuance of the
search warrant.  Later that evening, between 10:00 and 10:15 p.m.,

(4)

the defendant observed Pieroway at the station and saw him leave
with a brown bag.  The drugs that was alleged found in the
apartment was also in a brown bag similar to the one Mr. Nelson
saw Detective Pieroway with.  Defense counsel at trial did file
a motion to suppress.  At the hearing on the Motion to Suppress,
eversley, Cunningham. Pieroway and Gaughan were available to
testify, but rather that call these officers to the stand or
introduce documentation promulgated by these officers, defense
counsel relied only upon the testimony of Mattie Brown in order
to show that the search had been conducted prior to the issuance
of the warrant.

    The motion judge concluded, inter alia, that Nelson's
attorney had broadly alleged that the Boston Police had searched
the apartment prior to the issuance of the warrant, but that
they failed to offer any credible evidence to substantiate the
allegations.  The Court found the testimony of Mattie Brown
biased and unreliable.

    The court also noted that Nelson's attorney challenged
additional statement made in the affidavit in support of the
warrant.  Although this information was crucial to the defense,
counsel did not file any documents.  As such, the judge held
that this "oral challenge" was made in violation of Mass.R.Cirm.
P. Rule 13(a)(2) and deemed the issue waived.

    Despite Mr. Nelson's numerous written and oral request to
appellate counsel that the brief include an argument for
ineffective assistance of counsel based on counsel failure to

(5)

impeach Pieroway concerning his June 26th, 1996 Grand Jury
testimony relative to the alleged testing of the drugs,
appellate counsel failed to include this argument in the
appellate brief.  Nelson also sought to present the argument
that trial counsel was ineffective for his failure to present
conclusive evidence that the Boston Police Drug Depository Log
Sheet indicated that all evidence discovered in the apartment
was written in the log at 1:00 a.m., which was prior to the
issuance of the search warrant.  Despite repeated requests by
Mr. Nelson, appellate counsel did not include these arguments
in Mr. Nelson's brief.

     The Federal Habeas Corpus Statute establishes two
jurisdictional prerequisites for Federal Habeas Corpus Releif
of state prisoner's convictions.  The first prerequisite
focuses on the status of the petitioner, who must be "in
custody;" the second prerequisite focuses on the substance of
the claim being asserted which must challenge the legality of
custody on the ground that it is, or was impose, "in violation
of the Constitutional Laws or Treaties of the United States."
See 28 U.S.C. § 2241(c)(3)(1994), 28 U.S.C.A. §2254(a)(West
1994 and Supp. 1998).  As in this case, the alleged search
warrant was invalid and in violation of the Fourth Amendment
Right to the United States Constitution and Fourteenth
Amendment Right to the United States Constitution, based on
the fact that the search warrant was issued on June 18, 1996,
and executed at 1:30 a.m., which was long after the search on
the 17th.

                              (6)

The Fourth Amendment States:

"The right of the people to be secure in their person,
house, paper, and effects, against unreasonable searches and
seizures, shall not be violated, and no warrant shall issue,
but upon probable cause, supported by oath or affirmation,
and particularly described/describing the place to be
searched, and the person or things to be seized."

The Federal Habeas Corpus Statue allow challenges to
state convictions and sentences insofar as they violate "treaties
of the United States and Constitutional Violation. Bread v.
Greene, 118 S.Ct. 1352, 1355 (1998)(per curiam); Liu v. United
States, 117 S.Ct. 1491 (1997); Herrmann v. Meese, 849 F.2d 101,
102-03 (3rd Cir.), cert denied, 488 U.S. 867 (1988); and Emami v.
United States District Court, 834, F.2d 1444, 1449 (9th Cir. 1987)
Even Federal Common Law may form the basis for a challenge to a
federal or state prisoner's custody in certain circumstances.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court
held that one important federal common law or "prophylactic"
rule-the Fourth Amendment Exclusionary Rule-does not reviewable
in habeas corpus cases unless its violation is compounded by the
state's denial of the petitioner of the opportunity for a "full
and fair consideration" of the violation in the state court. Id
at 486 (prophylactic right created by Mapp v. Ohio, 367 U.S. 643
(1961), to exclude illegally seized evidence at trial is not
enforceable in habeas corpus if state provides full and fair
remedy for Fourth Amendment exclusionary rule violation.  As
in this case now before review the state failed to give the
petitioner a full and fair consideration to the validity of the

alleged search warrant.

During the hearing on the petitioners motion to suppress, the Honorable Judge Borenstein, J., stated: "In addition, on December 4, 1996 after an evidentiary hearing was held on the warrantless seizure and search, Nelson's attorney without providing notice to the Commonwealth or the Court and without accompanying written motion or affidavit, challenged three additional statement in the affidavit [oral challenges]". The judge further stated: "The court is not required to entertain the oral challenges, as they have been made in violation of procedural rules governing pretrial motion. See Mass.R.Crim. P. Rule 13(a)(2)(requiring that pretrial motion states all grounds on which it is based). See also the judge finding of facts in (Vol. II, R. 169-70).

Despite the fact that the return of the search warrant, Lieutenant Cunningham's Police Report, and the Boston Police incident report were admitted into evidence at the suppression hearing, trial counsel failed to call Cunningham to testify because he had specific knowledge that Eversley's testimony was false. Specifically, Cunningham, by his own admissions, knew six hours prior to the issuance of the search warrant that Eversley and others (officers) had already searched the apart-ment. The search was based on unsubstaniated statement of a informant not known to the Boston Police officers. This denied the petitioner a full and fair opportunity to litigate his

(8)

claim at the state level.  The stone doctrine effects this petitioner, because the stone doctrine affects an important set of federal rights, but also because of the lengths the Supreme Court has gone to confine the doctrine to that single set of Fourth Amendment exclusionary rule claims.  As a general rule, therefore, all properly exhausted and preserved federal constitutional claims challenging the legality of a state's or the federal government , holding the petitioner in-custody, or the terms, duration, and possible the conditions of that custody, are cognizable in  Habeas Corpus.  Also cognizable are custodial challenges premised on the limited set of federal statues, treaties, and federal common law rights that bear on the propriety and conditions of criminal confinement by states and that implicate important principles of national law or important individual liberty interests, as demonstrated in this instant case, now before this Honorable Court.  Had appellate counsel presented the issue of ineffective assistance of trial counsel adequately in his first motion for a new trial and on appeal, the issues would not be deemed waived.  The Federal Statute for post-conviction relief, 28 U.S.C. § 2255 is analogous to Rule 30 of the Massachusetts Rules of Criminal Procedure.  A recent United States Supreme Court case, Massaro v. United States, 123 S. Ct. 1696 (2003), addressed issues of ineffective assistance of counsel and post-conviction relief. The court stated: "We do hold that failure to raised an

(9)

ineffective-assistant of counsel claim on direct appeal does not barred the claim from being brought in a later, appropriate proceeding under § 2255.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court of the United States addressed "the specific question" whether "state prisoners-who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state court at trial and on direct review-may invoke their claim again on federal review. Id., at 489. The court concluded "that where the state has provide an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. See Brecht v. Abrahamson, 507 U.S. 619, 635 (1993)(dicta)(pursuant to Stone v. Powell, "[C]laim under Mapp v. Ohio, 367 U.S. 643 (1961), are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate them at trial or on direct review); Cardwell v. Taylor, 461 U.S. 571 (1983) (Stone preclusion doctrine applies regardless of form of fruits of asserted Fourth Amendment violations).

The reasoning of Stone v. Powell and the court's subsequent applications of the Stone doctrine make apparent that the doctrine is limited to claims arising entirely under the Fourth

Amendment's exclusionary rule-i.e., to claims in which the sole federal violation asserted is the state court's failure at trial to exclude evidence obtained from a search, seizure, or arrest that the Fourth Amendment prohibits.  Contrary to the respondents belief, petitioner's Writ of Habeas Corpus is not solely based on Fourth Amendment exclusionary Rule violation. Petitioner is claiming ineffective assistance of counsel against both trial and appellate attorney's for counsel's failure to raise and challenge the illegal search, and the defective search warrant.  The police failed to secure a proper search warrant, and used an invalid search warrant after the fact.  This coupled with the fact that the search was conducted six (6) hours prior to the warrant being issued and petitioner's right to testify in his own defense warrants habeas corpus review.  As the court remarked in <u>Withrow v. Williams</u>, 507 U.S. 680 (1993), in rejecting the state's attempt to apply <u>Stone</u> to barred habeas corpus consideration of Miranda violations, "we have repeatedly declined to extend the rule in <u>Stone</u> beyond its original bounds. <u>Id</u>., at 687 (quoted in <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994) (Plurality Opinion)).

In <u>Stone</u> itself, the Supreme Court reviewed two lower court decisions.  In the first, the 9th Circuit concluded that a state court should have suppress a murder weapon the police discovered during a search incident to an unlawful arrest.  This mirrors petitioners case, as there was no probable cause to make a Terry Stop and arrest, based on an unsubstantiated informant alleged

(11)

statement, and the fact that the search warrant was defective and invalid. In the second case, the 8th Circuit concluded that the state court's should have suppressed evidence of a bomb-manufacturing operation that had been seized pursuant to a defective search warrant. In each case, the Federal Court ordered the State either to release the petitioner or to conduct a New Trial at which the illegally obtained physical evidence would be excluded. Stone, Supra, 428 U.S. at 469-74. On its face, Stone held only that-assuming an "opportunity for full and fair litigation" of the Fourth Amendment claim at the state level a federal court could not order a state court to apply the Fourth Amendment exclusionary rule to suppress physical evidence that was the fruit of an illegal search, seizure, or arrest. Stone's facts are important because the Supreme Court expressly limited its holding to those facts:

> "our decision today is not concerned with the scope of the habeas corpus statue as authority for litigating constitutional claims generally. We do reaffirm that the exclusionary rule is a judicially created remedy rather than a personal constitutional right,...and we emphasize the minimal utility of the rule when sought to applied to Fourth Amendment claims in a habeas corpus proceeding, ...in sum, we hold only that federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review. Our decision does not mean that the federal court lacks jurisdiction over such a claim, but only that the application of the rule is limited to cases in which there has been both

(12)

such a showing and a Fourth Amendment violation. Id at 494 n.37. See also Arizona v. Evans, 514 U.S. 1, 10-11 (1995); Illinois v. Gates, 642 U.S. 213, 223 (1983)."

Petitioner in this instant case was denied a full and fair opportunity to litigate his Fourth Amendment claims. See Withrow v. Williams,113 S.Ct. 1745, 507 U.S. 680 (1993). Stone decision' holding that, when state had given full and fair chance to litigate Fourth Amendment claim, federal habeas review was not available to state prisoner alleging that his conviction rested on evidence obtained through unconstitutional search and seizure, did not impose jurisdictional limitation on federal habeas relief; limitation rested upon prudential concerns counseling against application of Fourth Amendment exclusionary rule on collaterall review.

citing from Withrow v. Williams, in a third instance, in Kimmelman v. Morrison, 477 U.S. 365 (1986), the court again declined to extend stone, in that case to bar habeas review of certain claims of ineffective assistance of counsel under the Sixth Amendment. The court explained that unlike the Fourth Amendment which confers no "trial Right." The Sixth confers a "fundamental Right" on criminal defendants, one that "assures the fairness, and thus the legitimacy, of our adversary process. " 447 U.S. at 374. The court observed that because a violation of the right would often go unremedied except on collateral reviewing "restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation." Id, at 378

(13)

In <u>United States ex Rel. Bostick v. Peters</u>, 3 F.3d 1023 (7th Cir. 1993); on remand 843 F.Supp. 1240, affirmed 46 F.3d 1133 (1993) (presentation of Fourth Amendment claim is frustrated by failure in state procedural mechanism, so as to provide basis for habeas corpus relief, if there has been no meaningful inquiry by state courts into that claim, either because state courts did not carefully and thoroughly address factual basis of claim or because  state court did not apply proper constitutional case law to facts as developed.

In the instant matter, appellate counsel's brief to the Appellate Court failed to include an argument based upon the ineffective assistance of trial counsel, even though trial counsel failed to properly present exculpatory evidence to support the claim of petitioner's warrantless arrest, the warrantless search of Apartment 327, and the seizure of certain evidence, even though petitioner vigorously sought inclusion of said argument prior to and during trial.  The constitutionally protected remedy for this ineffective assistance is the allowance of a motion for a new trial. <u>commonwealth v. Frisino</u>, 21 Mass. App. Ct. 551, 556 (1986).  In considering the issue of ineffective assistance of counsel, the question become whether the record shows that the performance of trial counsel fell "measurable below that which might be expected from an ordinary fallible lawyer," and whether petitioner was prejudiced as a result of counsel's performance.  In this case, the petitioner

demonstrated that both counsel's were ineffective.    See
Commonwealth v. Saferian, 366 Mass. 89, 96 (1974); Commonwealth
v. Urena, 417 Mass. 692 (1994).

In Jackson v. Virginia, 443 U.S. 307 (1979) the court refused
to apply Stone to due process claims of insufficiency of the
evidence, explaining that "[t]he question whether a defendant has
been convicted upon inadequate evidence is central to the basic
question of guilt or innocence" and "far different from the kind
of issue" that was the subject of the courts decision in Stone
v. Powell, Id, at 323.    In Rose v. Mitchell, 443 U.S. 545 (1979)
the court declared that Stone is inapplicable to claims that
"direct[ly] question" the "integrity of the judicial system",
such as Equal Protection challenges to racial discrimination in
Grand Jury selection. Id at 563.

In Kimmelman v. Morrison, 447 U.S. 365 (1986) the unanimous
court again demonstrated its unwillingness to extend Stone's
holding to non-Fourth Amendment claims.    In Kimmelman, New
Jersery sought a ruling that "the restrictions...announced in
Stone v. Powell should be extended to Sixth Amendment claims of
ineffective assistance of counsel where the principal allegation
and manifestation of inadequate representation is counsel's
failure to file a timely motion to suppress evidence allegedly
obtained in violation of the Fourth Amendment. Id at 374. As in
this instant case trial counsel failed to suppress the evidence
unlawfully seized in the execution of the defective search warrant
rendering trial counsel ineffective.    The court rejected the
State's argument, Id at 382-83, accord Id at 391-93 Powell J.,

(15)

concur reiterating that Stone "rested its holding on prudential, rather than jurisdictional, grounds as "merely" a "judicially created structural remedy 'designed to safeguard Fourth Amendment Rights through its deterrent effect' "and" 'not a personal constitutional Right"' arising directly under the Constitution. Id at 379 n.4 (quoting Stone, Supra, 428 U.S. at 486, 495 n. 37 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974))).  The court explained that the jurisprudential concerns that permitted the exclusion of claims arising under the subconstitutional and merely prophylactic Fourth Amendment exclusionary rule could not be squared with the different policies underlying the Sixth Amendment requirement of effective assistance of counsel.  See Reed v. Farley, 512 U.S. 339 (1994) (Plurality opinion); Kimmelman, Supra, 477 U.S. at 374 (Sixth Amendment "assures the fairness, and thus the legitimacy, of our adversary process").  See also and compare Miranda v. Arizona, 384 U.S. 436 (1966).  The court had expressly reserved the question whether Miranda claims are subjected to Stone preclusion.  See Deckworth v. Eagan, 492 U.S. 195, 201 n. 3 (1989); Wainwright v. Sykes, 433 U.S. 72, 87 n. 11 (1977).  In its 1993 decision in Withrow v. Williams, 507 U.S. 680 (1993), however, the court declared that not even Miranda violations warrant application of the Stone v. Powell rule.  Discussing Withrow, as well as Stone, Jackson; Rose, and Kimmelman is Reed v. Farley, 512 U.S. 339, 348-49 and n. 7 (1994)(Plurality Opinion).

(16)

Even with regard to Fourth Amendment exclusionary rule claims, the Stone doctrine bars federal habeas corpus review ONYL (emphasis added) if the state properly invoke the defense and if the federal court determines that the state prisoner actually had a full and fair opportunity to litigate the claim in state court. As the court made clear in Stone, the bar to adjudicating such claims in habeas corpus proceeding is not a matter of jurisdictional or cognizability.  As the 7th Circuit observed in reversing a district court's ruling that Stone precluded federal habeas corpus review of Forth Amendment claim, "the essential premise in the court's analysis [Stone] was the presumption that state courts take Fourth Amendment claims seriously...[i]f Fourth Amendment claims fall on deaf ears in the states courts and defendant are than precluded from raising their claims on [Federal] collateral review, the efficacy of the Exclusionary Rule in deterring future Fourth Amendment Violations would be undermined."  United States Ex Rel. Bostick v. Peters, 3 F.3d 1023, 1026 (7th Cir. 1993).

A habeas corpus petitioner's presentation of a Fourth Amendment Exclusionary Rule claim accordingly obliges the Federal Court to examine state court procedures and the prior proceeding in this carefully to ensure that the petitioner did indeed have a "full and fair opportunity to litigate" the claim in state court. Arguable, however, Stone does not apply to Capital cases.  In general Stone v.Powell, 428  U.S. 465 (1976 does not barred Fourth Amendment Exclusionary Rule claims as to which the

(17)

petitioner did not have the "opportunity for full and fair litigation" at "trial and on direct appeal." Stone invites confusion by addressing the issue exclusively in a footnote containing only an unexplained "cf." citation to the court's earlier decision in Townsend v. Sain, 372 U.S. 297 (1963) even a part from the "Cf" signal, the citation of Townsend is ambiguous because that case described how "full and fair" (1) an actual state court (2) evidentiary hearing or (3) a factual matter must be in order to preclude habeas corpus relitigation. The issue is complicated still further by the Supreme Court's subsequent overruling of one of the relevant portions of Townsend v. Sain, in Keeney v. Tamayo-Reyes, 504 U.S. 1 (1997). Stone v. Powell, by contrast, refers to (1) "an opportunity" (2) for "full and fair litigation," (3) at trial or on appeal, (4) of both legal and factual issues. The Supreme Court has not returned to the issue since Stone. See Shoemaker v. Riley, 459 U.S. 948 (1982) (White J., dissenting from denial of certiorari); Dunn v. Rose, 504 F.Supp. 1333 (M.D.Tenn. 1981).

As in this case now at bar, the petitioner was not afforded a full and fair opportunity to litigate and challenge the Fourth Amendment exclusionery rule violations, because he was not afforded effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, and as (1) "the state provided no corrective procedure at all to redress" claims of the sort that petitioner has raised; (2) the state provided no "reasoned method of inquiry into relevant questions

(18)

of fact and law; and (3) "[t]he processes provided by [the] state to fully and fairly litigate [the claim] are routinely or systematically applied in such a way as to prevent the actual litigation of [such] claims on their merits. See Gates v. Henderson, 568 F. 2d 830, 840 (2nd Cir. 1977)(en banc), cert. denied, 434 U.S. 1038 (1978)(dicta). See also Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1944) (en banc), cert. denied, 514 U.S. 1052 (1995); Capellan v. Riley, 975 F.2d 67, 70 (2nd Cir. 1992); Doescher v. Estell, 616 F.2d 205, 207 (5th Cir. 1980); Franks v. Delaware, 438 U.S. 154 (1978); United States Ex Rel. Petillio v. New Jersey, 562 F.2d 903, 905 and n. 3 (3rd Cir. 1977); O'Berry v. Wainwright, 546 F.2d 1204, 1210 n. 10 (5th Cir.) cert. denied, 443 U.S. 911 (1977) (dicta); Doescher v. Estelle, 666 F.2d 285, 287 (5th Cir. 1982); United States Ex Rel. Conroy v. Bombard, 426 F.Supp. 97, 109 (S.D.N.Y. 1976); Reley v. Gray, 674 F.2d 522, 526 (6th Cir.), cert. denied, 459 U.S. 948 (1982) (dicta); Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980); and Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978) (dicta). "No full and fair opportunity" situations is a systemic defect.

[E]ven where the state provides [a facially adequate] process, [if] the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the requisite opportunity for a full and fair litigation is absent. Gates v. Henderson, Supra, 568 F.2d at 840. See e.g. Willett v. Lockhart, 37 F.3d 1265, 1272-73 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1052 (1995) (4th Amendment claim is not "Stone-Barred" if

(19)

"prisoner was foreclosed from using [state corrective mechanism] ...because of an unconscionable breakdown in the system" in either the trial court or the state appellate court);  and <u>Stephens v. Attorney General</u>, 23 F.3d 248, 249 (9th Cir. 1994). The Federal District Courts must conduct hearing on disputed factual allegations and may not give presumptive weight to state court's fact finding if "the habeas applicant did not receive a full and fair evidentiary hearing in [the] State Court.  It is "inconceivable" that the state court could have applied the court standard to reach the conclusion they did.

<u>CONCLUSION</u>

For the reasons stated in the aforementioned memorandum of law and his filed Writ of Habeas Corpus that this Honorable Court should as a matter of law dismiss the Respondents Motion to dismiss in part, and proceed with the Habeas Corpus review.

Respectfully Submitted
By The Petitioner


Filbert Nelson, pro-se
MCI-Norfolk
P.O. Box 43
Dated: September 10, 2004.    Norfolk, MA 02056

CERTIFICATE OF SERVICE

I, Filbert Nelson, hereby certify under the pains and penalties of purjury that a true copy of my motion in opposition has been served upon the respondent and/or his attorney of record Ms. Susanne Reardon, Assistant Attorney General, Criminal Bureau, by mailing same postage prepaid first class mail to her address located at the office the Attorney General, One Ashburton Place, Boston, Massachusetts 02108 on this date.

Dated: September 10th ,2004        _____
                                   Filbert Nelson