COMMONWEALTH OF MASSACHUSETTS

SUFFLOK,ss

SUPERIOR COURT
No. SUCR96-11060

COMMONWEALTH

v.

FILBERT NELSON

DEFENDANT'S AFFIDAVIT IN SUPPORT
OF HIS MOTION FOR A NEW TRIAL

I, Filbert Nelson, being duly sworn, do hereby depose
and say the following under the pains and penalties of perjury;

1. On June 16, 1996, approximately 8:30-9:00 p.m., an
acquaintance Tony McClendon and I went out for a Father's day
drink at a few local bars.  When we got back to Tony's car, he
got out of my car and get into his car and left.

2. On June 17, 1996, approximately 9:30 a.m., Tony call my
job to informed me that he had left a small brown paper bag in
my car and would like to retrieved it. I informed Tony that I
was not driving the car that we were in the night before; that
I was going to the race track and wont be back until 4:00 or
5:00 p.m.  Tony informed me that he and his girlfriend were
going shopping that afternoon and would see me around 6:00 p.m.,
but never informed me what was in that brown paper bag.  I then
described my girlfriend's apartment building to Tony as my car
with his package was parked at her building parking lot not far
from the Dedham Mall.

(1)

a.42



1

Police Officer, you're under arrest. This individual grabbed my shoulder and throw me to the ground and handcuff me. Tony struggle to flee from the other individual in the car.

7. At that time, several individual's arrived to assist. I was search and Tony package was removed from my pocket which contained two small bags alleged to be cocaine. I asked the officers why was I arrested? and say noting more, the officers informed me that I was arrested for drug dealing.

8. I was transported to the area E-5 station and booked, while I was been booked, one of the officer now known to me as Detective Pieroway came to the station and took all my keys from the booking desk. He told the booking officer, not to allowed me any phone call and left.

9. Approximately 10:00-10:15 p.m., I observed Detective Pieroway at the station for a second time. I spoke with him and asked him, why I was not allowed to make a call to my families? he then allowed me to make a call; I then observed Detective Pieroway leave the station with a brown paper bag similar to the one found in the apartment. Coincidently, he admitted going by the area E-5 station to buy soda, chips and popcorn (A. 81A-C).

10. I made a call to my job after an officer informed me that my bail was $25.00 dollars. Although I attempt to make bail on my own, the officer informed me that my money were consider drug money; that someone would have to make bail for me. My friend came with the money and left it after he was told I'll

,2.44

be arraign the next morning. At the arraignment bail was set
at $250,000.00 cash.

11. In July or August of 1996, I retained attorney (John
Moscardelli) to represent me for a fee of $10,000.00 dollars.
I informed him of the incident that lead up to my arrest; that
Sgt. Eversley, Det. Pieroway and Officer Gaugham entered and
remained in the apartment by themselves without a warrant,
and that I observed Detective Pieroway leaving the station
late that night with a brown paper bag. I also asked attorney
Moscardelli to question Lieutenant Cunningham about his
conversation with Sergeant Eversley on June 17,1996, where
Eversley "notified" Cunningham's that 200 grams of cocaine
and $71,000.00 dollars were found and seized from the
apartment with a warrant. Cunningham's report was filed on
June 17,1996 at 19:22 hours.

12. According to the search warrant, it was issue on June 18,
1996 and executed at 1:30 a.m., the officers conducted their
search of the apartment and my car until they left at
approximately 4:00 or 5:00 a.m. to inventory all items at the
station according to their testimony.

13. Attorney Moscardelli filed a motion to suppress with an
affidavit on 11/14/96. The hearing was held on December 3, 4,
and 9th 1996 before Borenstein J., and was denied on April 16,
1997. The Court conclude  inter alia, that the defendant
attorney broadly allege that the police search the apartment

(4)

R.45

(   )
( R )
(   )
( 4 )

with no credible evidence, and made (Oral Challenge), as they
have been made in violation of procedural rules governing
pretrial motion Mass. R. Civ. P. 13 (a)(2).

14. Prior to the ruling on the motion to suppress,
Moscardelli informed me that he will need an additional
$5,000.00 dollars for trial if the motion is denied. I informed
him that we have already agreed on $10,000.00 to represent me,
so I will pay no more, at that time he informed me to get
another attorney and send me a bill for $11,362.50.

15. On February 2,1997, I met with attorney Belezos at the
Nashua Street Jail. We agreed on a fee for $7,000.00 dollars
for representation, he files his appearance on 2/10/97.

16. I met with Belezos on several occasion and informed him
to file an interlocutory appeal, but he refused. Prior to
trial, I also informed him that I wanted to testify and have
(Tony) the informant at trial. Belezos wrote me on May 21,1997
informing me he's prepared to seek leave to withdraw before
doing so.

17. I also informed Belezos on several occasion, that I saw
Detective Pieroway leaving the station with a brown paper bag
late that night; that he testified to the grand jury on June
26,1996 precisely to the drugs seized from the apartment, that
.they were tested positive by the State Laboratory to be
cocaine, but gave estimate to the one's taken from my pocket.
However, the State Laboratory received the drugs on June 20,
1996, analyzed all the drugs on July 17,1996, sworn and

(5)

n.46

subscribed to them on July 18th, 21st and 29th 1996 by analysts Kevin McCarthy and Sandra Lipchus..

18. I also asked Belezos to call Lieutenant Cunningham's of the Wellesley Police Department to question his conversation with Sergeant Eversley, where Lieutenant Cunningham clearly stated he was "notified" by Sgt. Eversley on June 17,1996 that 200 grams of cocaine and $71,000.00 dollars were found and seized from the apartment; also the Boston Police incident report indicating many blunder where time and date were change to coincide with the warrant, as well as the numbers of drugs found.

19. The matter went to trial on May 30,1997. The Honorable Spurlock J., presided over a jury trial that lasted until June 4, 1997. The jury declared itself hopelessly deadlocked and the Honorable Spurlock J., declared a mistrial.

20. During the trial, Belezos never call Tony McClendon or Lieutenant Cunningham to testify, nor did he question the officers about the many blunder in their reports, as well as Sergeant Eversley, his conversation with Cunningham.

21. A second trial was held on June 9,1997, presided over the Honorable Spurlock J., prior to impaneled the jury, I informed the trial judge that attorney Belezos was not representing me in his best interest; that I have not seen a search warrant and would like a continuance to seek new counsel. Attorney Belezos also request to withdraw, but the

(6)

R.47

R.
6

Judge denied both request and order the trial to continue.

22. A jury was impaneled, and on June 10,1997, I was found guilty and sentenced on June 11,1997 to 18 to 20 years by the Honorable Spurlock J.,

23. During the entire trial, attorney Felezos still did not call any witnesses on my behalf or question the officers on the issues I present to him. The fact that Pieroway testify to the grand jury that the drugs were tested, when they were not, it would have been impossible for him to testified to the precise quantity and quality of the drugs at the grand jury proceeding, moreover, both Sgt. Eversley and Det. Pieroway testified to the proper procedure taken when they found the drugs in the apartment on June 18,1996 (A. 150,A-D) (A.151-151A).

24. After my conviction on June 10,1997, I retained the law firm of McBride & Associates on July 22,1998 for a fee of $25,000.00 dollars. Thereafter, William A. Korman was assign to represent me on appeal. I met with Korman on several occasion to assess my case prior to the appeal.

25. During our visits, mail correspondence or phone calls, I have repeatedly informed Korman that I was not properly represented by prior counsel's at the suppression hearing or trial. I also informed him that I did spoke with the trial judge on 6/9/97 on the records that attorney Belezos was not representing me in his best interest.

(7)

R. 48

R
7

26. I constantly informed Korman to investigate my case prior to the appeal, where the evidence are overwhelming that a search took place prior to the search warrant, mainly Lieutenant Cunningham's who clearly stated he was "notified" by Sergeant Eversley on June 17,1996 that a search took place at the target apartment, that 200 grams of cocaine and $71,000.00 dollars were found and seized. Also the Boston police report indicate that the time and date were change to coincide with the warrant.

27. I also informed Korman that Detective Pieroway testified to the grand jury that the drugs were tested positive, when they were not, and he admitted at trial that some of the bags **were never open** by the lab (A. 152A). However, the State Laboratory issue a certificate that all the drugs were tested positive for cocaine.

28. On June 15,1999, I filed a pro-se motion for a New Trial an Affidavit in support with a Memorandum of Law. On August 18,1999, the Honorable Spurlock, J., without a hearing denied the motion.

29. I informed Korman that at no time I ever own a beeper, nor was I ever involved in any drug transaction with (Tony) the informant, and he has never been at that location to see me any time prior to that day.

30. I informed attorney Moscardelli, Belezos and Korman that after my back injury and settlement from H.P. Hood, I work for myself as a carpenter Monday thru Thursday and catering

R
8

at a local bar on weekend's since 1989. The money I had, was accumulate over the years, along with my settlement and thousand of dollars in lottery winning that can be proven , which was also kept in my safe at my girlfriend's apartment, as well as paying my taxes each years.

31. I was never arrested for any criminal offense before. During my entire adult life, I maintained steady employment, often worked two jobs at the same time to save for my future.

32. On the other hand, Tony McClendon the informant had an extensive criminal history both in Massachusetts and California involving drug dealing, and have sold drugs to the Norfolk County officers on several occasion prior to his arrest on June 17, 1996.

33. The only evidence introduce at trial prior to my arrest, were the hearsay testimony of the officers that Tony told them that he page me to order cocaine. The Commonwealth failed to produce any phone or beeper records to substantiate the officers or Tony allegation. The fact that Tony uses Sergeant Eversley cellular phone to page my beeper as the Commonwealth and the officers alleged, this phone records should have being made available at trial, but were not.

34. I have asked attorney Korman over the years to obtain the phone record for Sergeant Eversley, the beeper record as well as Lieutenant Cunningham work schedule. As of this day, no phone or beeper records exist.

(9)

n . 5ᵛ

35. From November 30, 1998, thru August 20, 1999, prior to my appeal having been filed. I wrote attorney Korman informing him to file ineffective assistance of trial counsel, due to trial counsel's failure to impeach Detective Pieroway about his grand jury testimony; and trial counsel's failure to present conclusive evidence to the jury that the search was made without a warrant by Sergeant Eversley's own admission to Lieutenant Cunningham on June 17, 1996, as well as the officer's reports indicating that evidence as logged in at 1:00 a.m.

36. The fact that the arrest took place at approximately 6:30 or 6:45 p.m., on June 17, 1996, and the officer's entered the apartment at 7:00 p.m., Lieutenant Cunningham of the Wellesley Police Department wrote his report on June 17, 1996, at 19:22 hours and clearly stated, "he was notified on June 17, 1996 by Sergeant Eversley" that a search was conducted at the target apartment with a warrant; that 200 grams of cocaine and $71,000. dollars were found and seized. It is also a fact that Ms. Brown arrived at her apartment approximately 10:45 p.m., after the officers entered. Surely, with three hours and forty five minuets, the officer's had enough time to conduct more than a search. It is also the fact that when Ms. Brown arrived, she immediately called her mother, who arrived at 11:05 p.m., and observed the apartment ransacked which she testified to.

37. Officer Gaughan testified that he went into the kitchen area immediately upon the arrival of the search warrant and the first thing he found was the drugs in the oven.

(10)

R.51



38. At the hearing on the motion to suppress, officer Gaughan and Detective Pieroway testified that they never used the telephone in the apartment on June 17, 1996. However, Ms. Brown phone bill showed a call made to Attleboro, Mass at 8:13 p.m., while both officers were station inside the apartment on June 17, 1996. That number belong to one of the officer.

39. In my possession, are the numbers which appeared on Ms. Brown's phone bill that neither one of us recognize.

40. I gave this information to both my prior attorneys, John Moscardelli and Christoper Belezos, Ms. Brown's attorney Martin Leppo was also informed, as well as William A. Korman.

41. The search end at approximately 4:00 or 5:00 a.m., on the morning of June 18, 1996, when the officers all left the apartment to inventory all the items at the station. Therefore, any conversation between Lieutenant Cunningham at the Wellesley Police Station and Sergeant Eversley of the Boston Police Station, would've taken place after the inventory, and Lieutenant Cunningham most definitely would've known that his conversation with Eversley was on the 18th, and not on the 17th as he documented it in his report.

42. On September 17, 1998, attorney Korman wrote me to informed me that he understand the trouble I had with other attorneys in the past inter alia, and again on October 1,1998, that he wanted to see justice done; that he believed I was the victim of unlawful and unconstitutional action.

43. On September 7, 1999, attorney Korman filed my appeal brief with the Massachusetts Appeal Court, and for the first time on



appeal, he stated that other evidence establish that the search took place on the 17th of June 1996, and not on the 18th as the Boston Police testified to. The Appeal Court declined to address the merit of the claim and summarily deny the appeal.

44. At no time did I ever possess or bring drugs into my girlfriend's apartment where my children reside. Further, at no time did I ever knowingly possess drugs of any kind or used drugs, and never sold or been asked to sell drugs to anyone.

45. Since I was notified of the denial of my appeal, I have been diligently researching those issues in my case that I believe have the most merits on a legal standpoint. Those issues that I have researched i.e., unconstitutional arrest and subsequent search without a valid search warrant, have proved viable in the Massachusetts Appeal Court, the Supreme Judicial Court, and has generally been accepted as unconstitutional in every other jurisdiction across the United States.

Sworn and subscribed on this _21st_ day of _May_ 2002.

/s/ _Filbert Nelson_
Filbert Nelson
MCI-Norfolk
P.O. Box 43
Norfolk, MA 02056

(12)

R-53

R
12

07/22/1996  15:44    6172353830        ,    .    WELLESLEY POLICE              PAGE  02

```
                    POLICE OFFICER'S FORMAL REPORT        07/01/96 14:16
                    WELLESLEY POLICE DEPARTMENT                   PAGE:  1
Case#:  54109
rpt date: 06/20/96 21:40              reported: MONDAY      06/17/96 19:22
    ucr: 423  MUTUAL AID

location:
    follow up by: None needed            case status:  CLEARED NORMAL
         officer:                         rpt status: Complete
                                       review officer:  71 G. HILDRETH
comp/vict notify: No           sup review officer:
cir/involve type:
---------------------------------------------------------------------------
complaint: ASSIST ANOTHER AGENCY
---------------------------------------------------------------------------
reporting officer:   7 T CUNNINGHAM         assignment: C      car: 1424
    second officer:  33 M. PRICE            sup/back-up:
---------------------------------------------------------------------------
```

### *** NAMES ***

| type | mast# | name/add | phone | dob | ss# |
|------|-------|----------|-------|-----|-----|
| DEFENDANT | 040077 | NELSON,FILBERT G | | 10/22/50 | 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 |
| | | 5050 WASHINGTON ST   WEST ROXBURY MA | | | |

### *** NARRATIVE ***

THE FOLLOWING SUMMERY OF FACTS WAS FILED BY DETECTIVE
LIEUTENANT T. CUNNINGHAM.

ON JUNE 17, 1996 I WAS CONTACTED BY DETECTIVE O'BRIEN FROM THE
NEEDHAM POLICE DEPARTMENT.  DET. O'BRIEN ASKED IF IT WOULD BE
POSSIBLE TO USE ONE OF OUR BLACK OFFICERS TO ASSIST HIS
DEPARTMENT IN MAKING AN UNDERCOVER DRUG PURCHASE.  DET.
O'BRIEN EXPLAINED THAT THE "CI" AND THE TARGET WERE BOTH BLACK
MALES AND A BLACK OFFICER WOULD FIT IN BETTER THAN A WHITE
UNDERCOVER.  I AGREED WITH DET. O'BRIEN AND I ASSIGNED OFF.
LAMAR HUGHES TO ASSIST WITH THE UNDERCOVER PURCHASE.

THE INFORMATION THAT WAS RELATED TO ME FROM DET. O'BRIEN IS AS
FOLLOWS.  DET. LT. SAMPSON OF THE SHREWSBURY PD CONTACTED DET.
SGT. DRONEY FROM THE NEEDHAM PD. LT SAMPSON TOLD SGT. DRONEY
THAT HE HAD AN INFORMANT THAT HE HAD JUST ARRESTED WHILE
EXECUTING A SEARCH WARRANT.  THE INFORMANT TOLD THE LT. THAT
HE WAS CAPABLE OF PURCHASING LARGE QUANTITIES OF COCAINE IN
NEEDHAM.  LT. SAMPSON AGREED TO BRING SEVERAL PEOPLE FROM THE
AREA DRUG TASK FORCE WITH HIM TO SHOW DET. O'BRIEN WHERE THE
LOCATION OF THE TARGETS HOUSE.

IT WAS AT THIS POINT THAT NEEDHAM CONTACTED OUR DEPARTMENT FOR
HELP.  OTHER MEMBERS OF THE NORTHERN NORFOLK DRUG TASK FORCE
WERE NOTIFIED AS WELL AND AGREED TO PARTICIPATE IN THE
OPERATION.  A CALL WAS MADE TO THE TARGET BY THE "CI" AND ONE
OUNCE OF COCAINE WAS ORDERED.  THE TIME OF THE MEETING WAS SET



07/23/1996  15:44   6172353838                   WELLESLEY POLICE                        PAGE  03

                          POLICE OFFICER'S FORMAL REPORT          07/01/96 14:16
                          WELLESLEY POLICE DEPARTMENT                        PAGE:   2
Case#:   54109
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### *** NARRATIVE ***

FOR 1830 HRS THIS DATE, OUTSIDE 5050 WASHINGTON STREET.  AT
THIS POINT WE REALIZED THE TARGET LOCATION WAS IN BOSTON MA.
A CALL WAS PLACED TO SGT. ERIC EVERSLY OF THE BOSTON POLICE
DRUG UNIT.  WE SET UP A MEETING BEHIND THE SEARS BUILDING ON
RT 1 IN DEDHAM FOR AS SOON AS POSSIBLE.

WHILE IN ROUTE TO THE MEET LOCATION I TRANSPORTED THE "CI" AND
OFFICER HUGHES, I DEBRIEFED THE "CI" AND I HAD THE "CI" AND
OFF. HUGHES SET UP A STORY AS TO HOW THEY KNOW EACH OTHER AND
WHAT OFF. HUGHES IS DOING THERE.

AT ABOUT 1800 WE MET WITH SGT. EVERSLY AND OTHER MEMBERS OF
THE BOSTON DRUG UNIT BEHIND THE SEARS AT THE DEDHAM MALL AND
AN OPERATIONAL PLAN WAS DEVISED.  IT WAS DECIDED THAT OFF.
HUGHES, SGT. EVERSLY AND THE "CI' WOULD TAKE OUR UNDERCOVER
FIREBIRD AND ATTEMPT TO GET THE TARGET INTO OUR VEHICLE.  AT
THAT POINT OFF. HUGHES AND SGT. EVERSLY WOULD ARREST THE
TARGET.

AT 1830, HRS THE "CI" POINTED OUT TO EVERSLY AND OFF. HUGHES
THE TARGET AND IDENTIFIED HIM AS THE INDIVIDUAL HE HAS BEEN
PURCHASING COCAINE FROM.  THE "CI" TOLD US THAT HE HAS
PURCHASED AS MUCH AS 15 OUNCES OF COCAINE AT ONE TIME FROM THE
TARGET.

SGT. EVERSLY AND OFF. HUGHES PULLED UP WITH THE "CI" IN THE
VEHICLE. THE TARGET APPROACHED THE VEHICLE AND AFTER A BRIEF
CONVERSATION SGT EVERSLY ALONG WITH OTHER MEMBERS OF THE DRUG
UNIT APPROACHED THE TARGET, HE WAS SEARCHED AND WAS FOUND TO
POSSESS (2) OUNCES OF COCAINE.  HE WAS PLACED UNDER ARREST FOR
TRAFFICKING COCAINE BY BOSTON POLICE DEPARTMENT.   OFF. HUGHES
HAD TO SECURE TO "CI" IN THE REAR OF THE UNDERCOVER VEHICLE AS
THE "CI" ATTEMPTED TO FLEE THE SCENE WHILE THE TARGET WAS
BEING ARRESTED.

THE WELLESLEY POLICE PROVIDED THE UNDERCOVER VEHICLE A
DETECTIVE, A LIEUTENANT AND ONE OF THE UNDERCOVER OFFICERS FOR
THE OPERATION.

I WAS NOTIFIED BY SGT. EVERSLY ON JUNE 17, 1996 THAT THE
BOSTON POLICE HAD CONDUCTED A SEARCH WARRANT ON THE TARGETS
APARTMENT.  THE TARGET WAS IDENTIFIED AS FILBERT NELSON.  AS
A RESULT OF THE SEARCH WARRANT THE BOSTON POLICE LOCATED AND
SEIZED $71,000.00 AND 200 GRAMS OF COCAINE.  THE BOSTON POLICE
WERE ALSO INVESTIGATING SEVERAL BANK ACCOUNTS AND AT LEAST ONE
PIECE OF PROPERTY IN MILTON MA.

(  R  )
(  14  )

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss
SUFFOLK SUPERIOR COURT
INDICTMENT No. 96-11060


COMMONWEALTH

v.

FILBERT NELSON


<u>AFFIDAVIT OF WILLIAM A. KORMAN</u>


I, William A. Korman, after being duly sworn, do hereby depose and state as follows:

1) My name is William A. Korman;

2) I am the attorney of record for Filbert Nelson;

3) I have been the attorney of record for Mr. Nelson since he hired the firm of McBride & Associates to litigate his appeal;

4) I drafted, filed, and subsequently argued Mr. Nelson's direct appeal;

5) While the appeal was being written, Mr. Nelson and I had several discussions concerning the contents of his direct appeal;

6) Mr. Nelson informed me on a number of occasions, that he wished for me to include specific arguments concerning the ineffective assistance of both motion counsel and trial counsel for failure to properly present exculpatory evidence of a warrantless search and seizure;

7) Originally, I believed these arguments to be without merit and did not include them in the direct appeal;

8) After the appeal was denied, Mr. Nelson presented a number of documents to me;



9) Additionally, Mr. Nelson presented me with his own independent legal research;

10) My review of these documents as well as the legal research conducted by Mr. Nelson compels me to reconsider my prior decision;

11) As such, it is my opinion that these arguments are indeed meritorious, and in fact, should have been included in his direct appeal or raised on a motion for new trial prior to the direct appeal itself.

Signed under the penalties of perjury on this the 20th day of May, 2002.

William A. Korman

1-3

PROCEEDINGS

(Monday, June 9, 1997)

THE CLERK:  In the matter of Commonwealth

vs. Filbert Nelson, 96-11060, two offenses of

trafficking in cocaine, a net weight of 200 grams

or more; and possession of a rifle within his

premises -- strike that -- possession of a gun.

On June 4th of 1997, the jury, having

deliberated for two days, reported that they were

hopelessly deadlocked; and the Court declared a

mistrial.  The matter is continued to this morning

for trial.  Is the Commonwealth ready for trial in

this matter?

MR. MALEC:  The Commonwealth is ready for

trial, your Honor.

THE CLERK:  Is the defendant ready for

trial in this matter?

MR. BELEZOS:  Your Honor, I would be

answering ready for trial.  However, the defendant

wishes to be heard on the issue of counsel. I will

stand by.

THE COURT:  What do you have to say, sir?

THE DEFENDANT:  Well, your Honor, there are

some things that I have requested, that I've been

1  asking my attorney for.

2       THE COURT:  You did what?

3       THE DEFENDANT:  I have been asking my

4  attorney for some document that I haven't received.

5       THE COURT:  Some property?

6       THE DEFENDANT:  No.  Some documents.

7       THE COURT:  What document?

8       THE DEFENDANT:  Excuse me?

9       THE COURT:  What documents?

10      THE DEFENDANT:  The search warrant, itself,

11  your Honor.  I have not seen that search warrant.

12      THE COURT:  As I understand it, there has

13  already been a motion to suppress in this case.

14      THE DEFENDANT:  Yes, your Honor.  But I've

15  been asking for this for a long period of time,

16  your Honor.

17      THE COURT:  So you want a copy of the

18  search warrant?

19      THE DEFENDANT:  I have not seen one.  I

20  have been requesting it.

21      THE COURT:  Do we have one, Mr. Clerk?

22  Mr. D.A., do you have a copy of the search warrant?

23      MR. MALEC:  I believe I do, your Honor.

24      THE COURT:  Well, could you make a Xerox



P. 179

1-5

1   copy and give it to counsel and he can give it to

2   his client?

3         MR. BELEZOS:  Your Honor, I have a copy.

4         THE COURT:  Oh, you do have a copy?

5         THE DEFENDANT:  What I have, your Honor --

6   to me, it's not the same.  It's not a search

7   warrant.  It's an inventory on the back of the

8   search warrant -- signed by the Judge with the date

9   and time it was issued.  And this is what the

10  debate is about with my attorney.

11        THE COURT:  The search warrant doesn't have

12  anything to do with this trial at this point,

13  anyway.

14        THE DEFENDANT:  I understand, your Honor.

15  But this is something that I have been asking for

16  long before --

17        THE COURT:  We'll get you a copy.

18        THE DEFENDANT:  Well, I would like the

19  Court to appoint me a new attorney.

20        THE COURT:  Oh, no.  The Court is not going

21  to appoint you a new attorney.

22        THE DEFENDANT:  Well, I can't afford an

23  attorney right now.

24        THE COURT:  Pardon me?

1-6

1    THE DEFENDANT:  I can't afford an attorney

2    right now.

3    THE COURT:  You have an attorney right

4    there.

5    THE DEFENDANT:  I'm not very familiar with

6    the law, your Honor.  There is something definitely

7    wrong with this case; and I've been trying to, you

8    know, ask my attorney what is wrong.

9    THE COURT:  There's something wrong with

10   this case?

11   THE DEFENDANT:  Yes.

12   THE COURT:  The only thing wrong with this

13   case is you had a juror that wouldn't follow the

14   law.  Otherwise, you would have been convicted and

15   sent off to jail by now.

16   THE DEFENDANT:  Well, your Honor, I would

17   like to see the copy.  I can't afford an attorney.

18   You said --

19   THE COURT:  Pardon me?

20   THE DEFENDANT:  I can't afford no more

21   money for attorney fees right now.

22   THE COURT:  Well, you have a very competent

23   attorney right there.  I mean, if it wasn't for

24   him, you'd be gone now.

( R )
( 20 )

1-7

1    THE DEFENDANT:  Well, we both don't seem to

2  agree on a lot of things, your Honor.  To me, he's

3  not presenting me to the best of my interests.

4    THE COURT:  I'm not going to appoint a

5  lawyer for you.

6    THE DEFENDANT:  I would like to continue

7  and have some time to see where I'm going right

8  now.

9    THE COURT:  This case is a year old.  If

10  you wanted to get an attorney, you had plenty of

11  time since -- when was the mistrial declared on,

12  Wednesday, Thursday?

13    MR. BELEZOS:  Wednesday.

14    THE COURT:  You had Thursday and Friday.

15  You could have contacted someone else, and you

16  didn't do that.  We will try the case today.

17    THE CLERK:  The matter is held for trial.

18    THE COURT:  Our only problem is jurors this

19  morning.

20    THE CLERK:  We probably won't know until

21  around 11:30 or so.

22    THE COURT:  Until around 11:30?

23    THE CLERK:  Yes.

24    THE COURT:  Can we be first in the morning?


R
21

# SEARCH WARRANT

G.L. c. 276, §§ 1-7

**TRIAL COURT OF MASSACHUSETTS**

West Roxbury _____ COURT DEPARTMENT

Criminal _____ DIVISION

SEARCH WARRANT DOCKET NUMBER

---

## TO THE SHERIFFS OF OUR SEVERAL COUNTIES OR THEIR DEPUTIES, ANY STATE POLICE OFFICER, OR ANY CONSTABLE OR POLICE OFFICER OF ANY CITY OR TOWN, WITHIN OUR COMMONWEALTH:

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is **PROBABLE CAUSE** to believe that the property described below:

- [ ] has been stolen, embezzled, or obtained by false pretenses.
- [XX] is intended for use or has been used as the means of committing a crime.
- [XX] has been concealed to prevent a crime from being discovered.
- [XX] is unlawfully possessed or concealed for an unlawful purpose.
- [XX] is evidence of a crime or is evidence of criminal activity.
- [ ] other (specify) _____

**YOU ARE THEREFORE COMMANDED** within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property: controlled substance (Class "B") as defined by the General Laws of the Commonwealth of Massachusetts in chapter 94c. A derivitive of the Cocoa leaf. Paraphernalia used in the cutting, bagging, and distribution of COCAINE. Notes, records, ledgers denoting sales of COCAINE. Personal papers/effects demonstrating occupancy or control of Apt. 327 at 5050 Washington Street in West Roxbury. Monies derived from the sale of COCAINE. Any and all other illegal controlled substances which may be situated in the Apt numbered 327 on the third floor rear of the brown ediface numbered 5050 Washington Street in West Roxbury.

---

- [XX] at: Apartment 327 at 5050 WASHING Street; West Roxbury. West Roxbury is a section of the city of Boston. Apartment 327 is situated in the rear of the building; which is a four story brown brick multi unit ediface. Also a 1985 Caddilac coupe; Eldorado, bearing Mass. Registration 847 CYH. This vehicle is parked on the odd side of Washington Street directly opposite #5050 Washington Street.

  which is occupied by and/or in the possession of: Mr. Filbert G. "Juicy" NELSON. Mr. Nelson is a male of West Indian decent. Approx. 5'8", 160lbs, DOB 10/22/50.  And Ms. Maggie BROWN. Ms. BROWN is a Black female approx. 34 yrs. Both subjects reside at 5050 Washington St. A-

- [XX] on the person or in the possession of: Mr. Filbert G. "Juicy" NELSON and Ms. Maggie BROWN.

  *(handwritten box: R 22-A)*

You [✓] are [ ] are not  also authorized to conduct the search at any time during the night.

You [ ] are [✓] are not  also authorized to enter the premises without announcement.

You [✓] are [ ] are not  also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**YOU ARE FURTHER COMMANDED** if you find such property or any part thereof, to bring it, and when appropriate, the persons in whose possession it is found before the _West Roxbury_ Criminal _____ Division of the _West Roxbury_ _____ Court Department.

---

DATE ISSUED 6/18/96

FIRST OR ADMINISTRATIVE JUSTICE
WITNESS:

SIGNATURE OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
X _____

PRINTED NAME OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
Martha B. Sosman

1-10

1    MR. MALEC:  At the very least, we'll try to

2    get the jury, openings in today and maybe one

3    witness.

4    THE COURT:  Okay.  We'll see what they tell

5    us.

6    (Recess.)

7    THE CLERK:  We have 50 jurors upstairs,

8    ready to go.

9    MR. BELEZOS:  Your Honor, for the record, I

10   would like to, on behalf of the defendant, renew

11   his motion for new counsel.  Secondly, for the

12   record, your Honor, I would also like to indicate

13   to the Court that I did transmit the offer of the

14   Court provided to me this morning and that the

15   Court would allow the defendant -- somewhere in the

16   range of ten years to ten and a day.

17   THE COURT:  Take what?

18   MR. BELEZOS:  Should he decide to change

19   his plea and enter a plea of guilty, I also

20   transmitted that out for the defendant at this

21   time.  He wishes to decline that.

22   THE COURT:  All right.  Well, I'm not going

23   to allow him to switch lawyers at this point in

24   time.  If he wanted to do that, he had plenty of

R.
23

# BELEZOS & GRATZER

## ATTORNEYS AT LAW

100 WEYMOUTH STREET, UNIT B2
OCKLAND, MASSACHUSETTS 02370
ELEPHONE (617) 871-8242
TELEFACSIMILE (617) 871-8232

512 GALLIVAN BOULEVARD
DORCHESTER, MASSACHUSETTS 02124
TELEPHONE (617) 288-8900
TELEFACSIMILE (617) 288-6210

May 21, 1997

**HAND DELIVERED**
**ABSOLUTELY CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION - DO
NOT REVIEW THIS DOCUMENT WITH ANY OTHER PARTY**

Filbert Nelson
C/O Suffolk County Jail
100 Nashua Street
Boston, Massachusetts

RE: Commonwealth v Nelson, 96SUCR11060 - Status

Dear Filbert:

Pursuant to our conversation of yesterday afternoon, I prepared the following document to provide you with an overview of your case. While this document is by no means a definitive statement as to the present status of the case nor any sort of prediction of future events; I hope that it answers at least some of your questions.

Currently your trial is scheduled to begin Friday the 30th of May, 1997. I anticipate that the trial judge will be Judge Spurlock. You are charged with two separate offenses. The first, and most serious, is Trafficking Class "B" in excess of 200 grams, pursuant to M.G.L. c94C section 32E. The penalty for this offense is 15-20 years in State Prison, with 15 of those years being minimum mandatory time. The second charge is the possession of a handgun, at home or at work, without having first obtained an F.I.D. card. (see M.G.L. c269 sec.10(h),). The penalty for this offense is not more than 2 years in the House of Corrections. Be advised, however, that if the jury finds that 5050 Washington Street was not your home or work, it is possible that the penalty could increase to that called for under section (a), 1-5 years in the State Prison, with 1 year of that sentence being a minimum mandatory. Although my initial inclination is to say that no such adjustment would be allowed post trial after the Commonwealth commits to proceeding under section (h), this is point of law which will require additional research on my part.

Prior to trial, we will argue a Motion for Relief from Prejudicial Joinder. I will provide you with a copy of the Motion and the Affidavit in Support. I believe that they speak for themselves, however, the basic idea is to get a separate trial from Maggie so that your inconsistent defenses don't end up undercutting each other so much that you both end up being found guilty.

The Commonwealth's main points of evidence against you are as follows: First, the cocaine on your person; Second, the statement attributed to you at the time of your arrest "You set me up;" Third, the keys on your person that fit the door to apt 327 @ 5050 Washington Street; Fourth, the fact that your license lists 5050 Washington as your residence; Fifth, the

(    )
(  R  )
(    )
( 24  )

statement attributed to you in Box #73 of the BPD 1.1 taking responsibility for the gun, Sixth, the cocaine found in the apartment; Seventh, the very large amounts of unaccounted for cash in the safe; Eighth, the personal papers and mail seized listing 5050 Washington Street as your address. In addition, a new statement has appeared over the last several days, in which you are alleged to have taken responsibility for the drugs by saying that they were yours and not Maggie's. At this time, it does not appear that this statement will be available to use against you, however, this something I'm still working on with the ADA. One thing is for sure. Maggie's attorney will try to use it.

Based upon our conversations, it is my understanding that you feel the following to be a more accurate reflection of the facts. The cocaine found on your person was Tony's to begin with and all of the calls he made were in an attempt to get back his stash. He had mistakenly left his stash behind during a social visit the previous day. As such, we would in essence be taking responsibility for the ouncer found on you, but, no more. Your position is consistent with the statement attributed to you at the time of your arrest "You set me up!" The second stage of your defense will be to try and separate yourself from the apartment. Your other residences would be brought up here. (This has some risk in that your income level does not seem consistent with a home in Milton) Further, there seems to have been no assay testing to match the purity of the two different cocaine seizures. Thus, we will argue that they cannot be scientifically connected. Further, the cash was in safe to which you did not have a key. If it was drug money, presumably yours, why don't you have a key. To go along with this, we will probably make a number of ancillary arguments regarding the difficulty they had finding the house etc.,. Finally we will have to deal with the gun. My understanding is that you contend you never made any statements regarding the gun.

The above strategy is premised on what I believe to be your version of the facts and would be dependent upon you taking the stand. While you have indicated a desire to testify, you must know that no one can ever force you to do so, and, if you do, you will be subject to significant cross-examination. While I will do my best to protect you, if the ADA stays within the rules, he can ask you about any part of your story.

Should we succeed in the defense outlined above and separate you from the apartment, you still face a 5-year minimum mandatory (assuming the weights come out as anticipated 284 grams). You do, however, avoid the 15-year minimum mandatory.

Given the above strategy, I see no possible benefit in putting Tony on the stand. Your desire to question him about the specifics of the tip he provided to the police only serves to bring these matters to the attention of the jury. Normally, such specifics would be inadmissable as extremely prejudicial to the Defendant, but, if you open the door, the Judge may allow in the prior bad acts. In essence, you would then be fighting off not just the allegations with which you are charged, but also, all of Tony's prior allegations. What possible good can this do you? How can you benefit from this? While I understand your desire to get at Tony for setting you up, the specifics of his tip are not all that important. The fact that he set up a meeting with you and you showed up with cocaine in your shorts is a big enough problem, we must not compound it by getting into prior dirty laundry. Better to simply tell your story and point out to the jury how Tony benefits from setting you up without having Tony around to complicate the situation.

p. 10



3

        In short, I consider calling Tony to the stand to be legal malpractice and am prepared to seek leave to withdraw before doing so.  The fee agreement we signed contemplated such decisions to be within my discretion.  While I will do my very best to follow your wishes as the client, I will not commit malpractice.  Your main choices are to decide whether or not you wish to go forward with a trial and, if so, whether or not you wish to testify.

        Should you wish to avoid a trial, I will immediately open negotiations with the ADA. While he had previously indicated that he would be seeking the full 15 year minimum mandatory, over the last week he has softened his position and is willing to consider a proposal on our part. While I am fully prepared to go forward with a trial, I strongly suggest we explore this option. Your case has a very, very, difficult fact pattern and our trial strategy is extremely risky.

        Finally, you asked me for a breakdown on what I have done so far.  To date, I have spent approximately 44 hours on your file. (rough estimate only)  This includes all jail visits, a visit to 5050 Washington Street, Court appearances, conferences with co-counsel, the ADA and the administrative personnel of the court, an extensive review of the transcripts, the Court's findings, the applicable cases law relative to a potential interlocutory appeal, researching, drafting & filing of motions, and trial preparations.   I have billed you for some, but not all, of your collect calls to the office. (time only, not the cost of the call)  Although we are working on a flat fee, this would leave you with about a $400-500.00 balance left on your initial retainer if translated out to my standard fee of 125.00 per hour.  In addition, I spent approximately $100.00 of my own funds getting the transcript of the Motion to Suppress.   Last, but not least, there remains outstanding a final payment of $1000.00 due this Friday should the matter go to trial.

        I hope this letter clarifies some the issues which are troubling you.  I remain...

                                        Respectfully yours,



                                        Christopher P. Belezos

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK. SS.                    TRIAL COURT OF MASSACHUSETTS
                               SUPERIOR COURT
                               IND. NO. 96-11059

| | |
|---|---|
| COMMONWEALTH | ) |
| | ) |
| V. | ) |
| | ) |
| MAGGIE BROWN, | ) |
| Defendant | ) |
| | ) |

## **MOTION TO SEVER**

Now comes the Defendant, Maggie Brown, by and through undersigned counsel,

pursuant to Mass.R.Crim.P. 9, *Commonwealth v. Moran*, 387 Mass. 644, 656 (1982),

and/or *United States v. Bruton*, 88 S.Ct. 1620, 391 U.S. 123 (1968), and hereby moves

that her case be severed from that of her co-defendant Filbert Nelson (Ind. No. 96-11060).

As grounds and reasons therefore, the Defendant states the following:

1.      Christopher Belezos, counsel for the co-defendant Filbert Nelson, has

indicated that Filbert Nelson intends on testifying on his own behalf.

2.      Mr. Belezos has also indicated that such testimony will exculpate himself

while implicating Maggie Brown.

3.      Therefore, should Mr. Nelson testify, the Defendant Maggie Brown will

have "to confront not only hostile witnesses presented by the Commonwealth, but also

hostile witnesses presented by her co-defendant." *Commonwealth v. Moran*, 387 Mass.

644, 656 (1982).



4.    The co-defendant Filbert Nelson made several admissions and/or confessions to the police after his arrest. Namely, (1) Filbert Nelson stated "you know where you found it . . . I found the gun 2 weeks ago", (2) Filbert Nelson stated "he set me up" when he was confronted by the police, and (3) Filbert Nelson made a statement to the effect that Maggie Brown had nothing to do with the drugs found in the apartment.

5.    Should Filbert Nelson decide not to take the stand in his defense, then a substantial risk arises that the jury will rely on the statements detailed in paragraph four above to find Maggie Brown guilty. These statements constitute "powerfully incriminating extrajudicial statements" admissible against Filbert Nelson but not Maggie Brown. Maggie Brown would be precluded from cross-examining Filbert Nelson regarding these statements, and severance is therefore mandated under *Bruton v. United States*, 88 S.Ct. 1620, 391 U.S. 123 (1968) and its progeny.

WHEREFORE, the Defendant respectfully requests that the instant motion be GRANTED.

The Defendant further relies on the affidavit of Martin K. Leppo attached hereto.

Respectfully Submitted,
Maggie Brown,
By Her Attorney

Martin K. Leppo
15 South Main Street
Randolph, MA 02368
(617) 961-3344
BBO #294480

R
28

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                    TRIAL COURT OF MASSACHUSETTS
                               SUPERIOR COURT
                               IND. NO. 96-11059

| | |
|---|---|
| COMMONWEALTH | ) |
| | ) |
| V. | ) |
| | ) |
| MAGGIE BROWN, | ) |
| Defendant | ) |
| | ) |

## AFFIDAVIT OF MARTIN K. LEPPO IN SUPPORT OF MOTION TO SEVER

Under oath, I depose and state the following:

1.    My name is Martin K. Leppo, I am an attorney at law with offices at 15

South Main Street, Randolph, Massachusetts.

2.    I represent the Defendant in the above-captioned matter.

3.    On or about May 15, 1997, I had a telephone conversation with

Christopher Belezos, the attorney for the co-defendant Filbert Nelson (Ind. No. 96-

11060).

4.    Mr. Belezos informed me that Filbert Nelson intends to testify in his own

defense and that his testimony would serve to exculpate himself while inculpating

Maggie Brown.

5.    On Thursday, May 15, 1997, I had a telephone conversation with Assistant

District Attorney Timothy Malec regarding the statement "you know where you found it .

. . I found the gun 2 weeks ago" contained in box #73 of the Boston Police Report of

Officer Timothy Gaughan,. This report details the arrest of Maggie Brown. I questioned



Mr. Malec whether this statement was really supposed to be attributed to Filbert Nelson, and whether the statement had mistakenly been attributed to Maggie Brown..

6.     On Friday, May 16, 1997, I received a letter via facsimile from Mr. Malec which advised that the statements contained in box #73 of the Boston Police Report of Officer Timothy Gaughan, and detailed in paragraph 5 above, were made by Filbert Nelson and not Maggie Brown.

7.     In addition, in the letter provided to me on Friday, May 16, 1997 via facsimile, Mr. Malec advised that Filbert Nelson also made the statement "Don't lock her up. The stuff is mine." after he was arrested and advised that police discovered the drugs in the apartment.

Signed under the pains and penalties of perjury this 19th day of May, 1997.

Martin K. Leppo

2-51

1   A   Yes, sir.

2   Q   What was he under arrest for?

3   A   Conspiracy to violate the controlled substance laws

4       of the Commonwealth of Massachusetts.

5   Q   And, at that point, you arrested Mr. Nelson for

6       conspiracy to violate the controlled substance laws

7       of Massachusetts.

8           At that point when you jumped him, did you

9       know if he had drugs on him?

10  A   Did I know for actual certainty?

11  Q   Yes.

12  A   I didn't know for an actual certainty that he had

13      drugs.

14  Q   You hadn't discovered any drugs yet when you

15      arrested him; is that correct?

16  A   I had not physically seen the drugs at that

17      particular time, no.

18  Q   So there was no bulge in his pocket; is that

19      correct?

20  A   I had not noticed a bulge in his pocket, no.

21  Q   Did you see anything in his hands?

22  A   No, sir.

23  Q   Had he shown you any product?

24  A   He had not shown me any product at that particular

LAW OFFICES
McBRIDE AND ASSOCIATES
A PROFESSIONAL ASSOCIATION
THE WATERFRONT BUILDING
SUITE 2B
240 COMMERCIAL STREET
BOSTON, MASSACHUSETTS 02109

JOHN C. McBRIDE
MICHAEL F. GERMANO
CARLOS J. DOMINGUEZ
WILLIAM A. KORMAN
JOSEPH P. GLEASON

TEL: (617) 367-8844
FAX: (617) 523-5153

December 15, 1998

Mr. Filbert Nelson
M.C.I. Shirley
P.O. Box 1218
Shirley, MA 01464

Dear Filbert :

I am sorry that it has been so long since I last wrote, but John and I were handling a murder case in the Suffolk Superior Court. As you can imagine, that case took up practically all of our time! I spoke with Maggie yesterday and explained to her that now that the case was over I would be able to devote more time to your matter. I plan on coming to see you the week of December 28th, but I am not sure which day. I think it will be Wednesday, December 30th, but I am not positive. I know that you are anxious to finally meet me in person and speak with me about all aspects of your case.

Concerning the differences in the times in the police report, search warrant affidavit and then the actual transcripts, I certainly agree with you. As you correctly state, one or two mistakes is understandable, but for there to be this number of mistakes is not only ridiculous, but offensive. Obviously the police were attempting to "monkey" with the times in order to justify the reasoning behind their "securing" the apartment prior to the arrival of the search warrant.

I am a little confused by your discussion of the drug analysis. What do you mean by Lt. Cunningham from Wellesley knew about the quantity of drugs. Please explain this



to me in your next letter. I think you may be on to something there, but I need you to explain it to me again.

Filbert, as I have told you before and I will tell you again, I absolutely agree with you that the cops were up to something. They are clearly trying to cover up their mistakes and blunders by messing with the times on the reports. Justice was most certainly **not** done. I am working hard to ensure that this time, Justice will prevail.

I look forward to meeting you later this month.

Very Truly Yours,

William Korman
